# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY MEANS,<br><br>　　　　　　　Plaintiff,<br>　v.<br>THE ARORA GROUP, INC., a corporation; and DOES 1 through 25, inclusive,<br><br>　　　　　　　Defendants. | CASE NO. 16cv2755-WQH-MDD<br><br>ORDER |

HAYES, Judge:

　　The matter before the Court is the Motion to Dismiss filed by Defendant The Arora Group, Inc. ("Defendant"). (ECF No. 4).

**I. Background**

　　On September 26, 2016, Plaintiff Mary Means ("Plaintiff") initiated this action by filing a complaint in the Superior Court of California, County of San Diego. (ECF Nos. 1 at 2; 1-2 at 4-13). The Complaint includes the following five causes of action: (1) wrongful termination in violation of public policy; (2) failure to provide adequate rest periods (premium wages); (3) failure to provide adequate meal periods (premium wages); (4) failure to provide accurate itemized employee wage statements; and (5) failure to pay timely wages after termination. (ECF No. 1-2 at ¶¶ 20-50). On November 8, 2016, Defendant removed this action to federal district court pursuant to 28 U.S.C. §§ 1441, 1442, and 1446. (ECF No. 1 at 1-2). On November 10, 2016, Defendant filed the Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). (ECF No. 4). On December 20, 2016, Plaintiff filed a response in opposition to the Motion to Dismiss. (ECF No. 10). On January 10, 2017, Defendant filed a reply to the Motion to Dismiss. (ECF No. 11).

**II. Allegations of the Complaint**

Plaintiff was employed by Defendant at the Naval Medical Center San Diego as an Obstetrics and Gynecology Medical Assistant. (ECF No. 1-2 at 4-5). Defendant is a healthcare professional staffing service. *Id.* at 4. "In or about March 2013, Defendant hired [Plaintiff] as a full-time, hourly Certified Medical Assistant in the OB/GYN Department at the Naval Medical Center[.]" *Id.* at 5. Plaintiff "handled all aspects of patient care in her position including: patient intake; scheduling patient appointments with specialists; ensuring receipt of test results prior to a patient's next appointment; abdominal and vaginal sonography; attaching patients to blood pressure and heart rate monitors and observing for any irregularities . . ." *Id.* at 5-6. "Due to her high-demand role at the Naval Medical Center in San Diego, California, [Plaintiff] routinely worked through lunch because of her tremendous workload." *Id.* at 6. "[D]ue to the break-neck pace of the medical clinic, [Plaintiff] would mentally tire some days and just wish she could take a break. Being unable to take breaks began to take its toll on [Plaintiff]. Eventually, [Plaintiff] began to make avoidable mistakes due to her fatigue and inability to take breaks." *Id.* at 7. "After making another mistake due to fatigue and being unable to take breaks to collect her thoughts and re-center herself, Defendants terminated [Plaintiff's] employment. But for Defendants' refusal to allow [Plaintiff] to take state-mandated rest and meal breaks, [Plaintiff] would not have been subject to mistakes resulting from her fatigue. Defendant's conduct resulted in [Plaintiff's] eventual termination." *Id.*

**III. Defendant's Requests for Judicial Notice (ECF Nos. 4-2 & 11-1)**

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted) (quoting *Branch v. Tunnell*, 14 F.3d

449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). "There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Id.* "First, a court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Id.* (quoting *Branch*, 14 F.3d at 453). "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)). Second, the Court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201. *Id.* at 689 (quoting *Mack v. S. Bay. Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). Federal Rule of Evidence 201 allows courts to take judicial notice of facts that are "not subject to reasonable dispute because" the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Defendant requests that the Court take judicial notice of (1) an August 25, 2016, 9:02 a.m. e-mail from U.S. Contracting Officer Representative Kenneth Powalsiz to Nancy Berman and Megan Wilson; (2) an August 25, 2016, 4:54 p.m. e-mail from Megan Wilson and Nancy Berman to Plaintiff Mary Means; and (3) a transcript of the evidentiary hearing in the matter of *Mary Means v. The Arora Group*, California Unemployment Insurance Appeals Board hearing, which took place on December 15, 2016. (ECF Nos. 4-2 at 1; 11-1 at 1). Plaintiff has not contested the authenticity of these documents, nor does Plaintiff oppose Defendant's requests for judicial notice. *See Lee*, 250 F.3d at 688.

The Court hereby takes judicial notice of an August 25, 2016, 9:02 a.m. e-mail from U.S. Contracting Officer Representative Kenneth Powalsiz to Nancy Berman and Megan Wilson; and an August 25, 2016, 4:54 p.m. e-mail from Megan Wilson and

Nancy Berman to Plaintiff Mary Means (ECF No. 4-2 at 1).

Defendant's supplemental request for judicial notice of the transcript of the evidentiary hearing in the matter of *Mary Means v. The Arora Group* on December 15, 2016 was submitted as a supplemental request attached to Defendant's reply brief. The Court declines to take judicial notice of the transcript, and denies Defendant's supplemental request for judicial notice (ECF No. 11-1). *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

**IV. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts 'to state a facially plausible claim to relief.'" *Id.* (quoting *Shroyer v. New Cindular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678).

**V. Government Contractor Defense**

    **A. Contentions of the Parties**

Defendant contends that all of Plaintiff's claims for relief are barred by the government contractor defense. Defendant contends that the United States Navy directed the alleged wrongful actions stated in the Complaint, and that the Defendant complied with the Navy's directives. Defendant contends that it provides medical services to the U.S. Naval Medical Center "pursuant to a personal services contract[,]" which provided the United States Navy with the authority to treat Defendant's employees as its own employees. (ECF No. 4-1 at 6).

Plaintiff contends that Defendant has failed to fulfill all of the elements of the government contractor defense. Plaintiff contends that Defendant has not demonstrated active participation between Defendant and the United States Navy in terminating Plaintiff's employment. Plaintiff contends that an email from a military official instructing Defendant to terminate Plaintiff's employment is insufficient to establish the government contractor defense.

**B. Applicable Law**

The government contractor defense arises from the Supreme Court's decision in *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940). In *Yearsley*, landowners brought an action for damages against a private contractor that built dikes in the Missouri River "pursuant to a contract with the United States Government, and under the direction of the Secretary of War[.]" 309 U.S. at 19. The Supreme Court held that the contractor was not liable to the landowners, because "the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States" and "the work thus authorized and directed by the governmental officers was performed pursuant to the Act of Congress[.]" *Id.* at 20 (quotation marks omitted). The Supreme Court stated that "it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Id.* at 20-21. The Supreme Court stated that this exception to liability does not apply if a contractor "exceed[s] his authority" provided by the government, or when that authority is "not

validly conferred" by the government. *Id.* at 21; *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016) (discussing *Yearsley*).

The Supreme Court again addressed the government contractor defense in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). *Boyle* addressed the potential liability of "an independent contractor performing its obligation under a procurement contract" to build a helicopter for the United States military. 487 U.S. at 502, 505. The Supreme Court stated that the government contractor defense is justified because any judgments arising from "state tort suits against contractors . . . would ultimately be passed through, substantially if not totally, to the United States itself, since defense contractors will predictably raise their prices to cover, or to insure against, contingent liability for the Government-ordered" work. *Id.* at 511-12. The Supreme Court stated that the test to determine whether the government contractor defense shields a contractor from liability involves a initial determination that the contract involves "uniquely federal interests" and that the contractor establish two elements: "(1) the United States approved reasonably precise specifications; [and] (2) the equipment conformed to those specifications[.]" *Id.* at 504, 512[1] (citation omitted); *see Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997) ("The military contractor defense is an affirmative defense; [the private contractor] has the burden of establishing it."). The Supreme Court stated that "[t]he federal interest justifying this holding surely exists as much in procurement contracts as in performance contracts; we see no basis for a distinction." *Id.* at 506.

Following *Boyle*, courts have applied the government contractor defense in cases involving both procurement and performance contracts between the United States and a private contractor. *See Campbell-Ewald*, 136 S. Ct. at 673 (discussing government

---

[1] In *Boyle*, the Supreme Court included a third element: "(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512. However, the Court does not address the third element, because the contract at issue in this case is not an equipment contract. *See Griffin v. JTSI, Inc.*, Civ. No. 08–00242 ACK–LEK, 2009 WL 8761211, at *15 n.45 (D. Haw. July 28, 2009).

contractor defense relating to a performance contract between United States Navy and contractor to send recruiting text messages); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008) ("[T]he government contractor defense applies not only to claims challenging the physical design of a military product, but also to the process by which such equipment is produced[,]" and "[t]he defense allows a contractor-defendant to receive the benefits of sovereign immunity when a contractor complies with the specifications of a federal government contract."); *Griffin v. JTSI, Inc.*, Civ. No. 08–00242 ACK–LEK, 2009 WL 8761211, at *12 n.36 (D. Haw. July 28, 2009) ("*Griffin* II") ("The Ninth Circuit's application of the [government contractor] defense has been limited to contracts involving specifications for the design or production of military equipment or operation of military facilities.").

Under the first factor, the contractor must establish that the United States was closely involved in the development of specifications that regulated the contractor's performance. "When only minimal or very general requirements are set for the contractor by the United States the rule is inapplicable. The situation is different where the United States reviewed and approved a detailed set of specifications." *McKay v. Rockwell Intern. Corp.*, 704 F.2d 444, 450 (9th Cir. 1983). In *Butler v. Ingalls Shipbuilding, Inc.*, a member of the United States Navy filed suit against the private manufacturer of a vessel accommodation ladder that was built pursuant to a contract with the United States. 89 F.3d 582, 583 (9th Cir. 1996). The Court of Appeals reviewed the language of the contract between the manufacturer and the United States, and concluded that the manufacturer constructed, installed, and tested the ladders according to a set of listed "specifications" provided by the United States. *Id.* at 584-85. The Court of Appeals found that the first element of the government contractor defense was satisfied because the United States provided the manufacturer "with extremely precise specifications and painstakingly reviewed [the Defendant's] conformance therewith." *Id.* at 585.

The contractor must demonstrate that the government's approval involved "more

than a rubber stamp." *Snell*, 107 F.3d at 748 (quoting *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989), *cert. denied*, 493 U.S. 935 (1989) (mem.)); *see also Boyle*, 487 U.S. at 525 (Brennan, J., dissenting) ("Had respondent merely manufactured the [] helicopter, following minutely the Government's own in-house specifications, it would be analogous to the contractor in *Yearsley*, although still not analytically identical since *Yearsley* depended upon an actual agency relationship with the Government[.]"). To find the government contractor defense applicable in a particular case, the contractor is "required to" provide the court with evidence of a "back and forth dialogue culminating in approval, and continuous exchange between the contractor and the government [] to satisfy *Boyle's* first condition[.]" *Butler*, 89 F.3d at 585-86 (citation and quotation marks omitted); *see also Griffin* II, 2009 WL 8761211, at *13 (finding the first element was satisfied because, "Although [the private contractor defendant] provided the personnel, the United States had the exclusive authority to manage and supervise [the private contractor defendant's] performance of security and technical services [at a military facility] under the Subcontract."). The second factor requires the court find that the contractor has complied with those reasonably precise specifications established by the United States. *See Griffin* II, 2009 WL 8761211, at *15.

**C. Analysis**

The Court must initially determine whether the contract between Defendant and the United States involves "uniquely federal interests[.]" *Boyle*, 487 U.S. at 504. In *Boyle*, the Supreme Court stated that a "uniquely federal interest[]" is presented "in getting the Government's work done" pursuant to a procurement contract. *Id.* at 505, 505 n.1. In this case, Plaintiff alleges that Defendant is a healthcare professional staffing service that employed Plaintiff at the Naval Medical Center San Diego. (ECF No. 1-2 at 4-5). Providing medical services to the United States Navy implicates a "uniquely federal interest[]" such that the government contractor defense could apply to this matter. *Boyle*, 487 U.S. at 504; *see also* 32 C.F.R. § 199.17(a)(7)(i) ("the

Department of Defense has determined that" providing health care and health insurance to members of the miliary may "have a direct and substantial effect on the conduct of military affairs and national security policy of the United States.").

To satisfy the first element of the government contractor defense, Defendant must demonstrate the existence of "reasonably precise specifications" which have been approved by the United States. *Id.* at 512. Defendant contends that the nature of the personal services contract entered into between Defendant and the United States supports a finding that the government contractor defense applies to this matter, and that two emails from the day Plaintiff's employment was terminated support the conclusion that Plaintiff was "terminated at the direction of the U.S. Navy." (ECF Nos. 4-1 at 7, 4-2 at 1-2).

The Complaint alleges that Plaintiff was hired by Defendant as a Certified Medical Assistant at the Naval Medical Center San Diego in March 2013. (ECF No. 1-2 at 4-5). The Complaint alleges that Plaintiff's employment was terminated by Defendant "[a]fter making another mistake due to fatigue and being unable to take breaks to collect her thoughts and re-center herself[.]" *Id.* at 7. Defendant bears the burden of establishing active participation beyond rubber stamping to support the government contractor defense. *Snell*, 107 F.3d at 746. Defendant has not provided the Court with any reasonably precise specifications established by the United States Navy. The only evidence presented to the Court relating to reasonably precise specifications are the two emails that Defendant attached to its Motion to Dismiss. *See Griffin v. JTSI, Inc.*, 654 F. Supp.2d 1122, 1128, 1138, 1138 n.32 (D. Haw. 2008) (finding the government contractor defense inapplicable when the court was presented with evidence of "a two sentence e-mail" from a representative of the United States "requesting that [the p]laintiffs be terminated immediately from their positions[,]" and concluding that the court could not "justifiably hold that [the] email could reasonably be compared to the 'specifications' at issue where the government contractor defense has been considered.").

Given the lack of reasonably precise specifications approved by the United States Navy, the record does not support the application of the government contractor defense to this case. The Court cannot conclude that Defendant is entitled to dismissal of this case as a matter of law based on the record. Defendant's Motion to Dismiss on the basis of the government contractor defense (ECF No. 4-1 at 5-13) is DENIED.

## VI. Wrongful Termination in Violation of Public Policy

### A. Contentions of the Defendant

Defendant contends that Plaintiff fails to state a cognizable claim for wrongful termination in violation of public policy because Plaintiff does not plead that she engaged in an "employee protected activity" that caused Defendant to terminate her employment. (ECF No. 4-1 at 13). Defendant contends that Plaintiff fails to allege that her employment was terminated for an unlawful reason. The opposition filed by Plaintiff does not address Defendant's Motion to Dismiss the wrongful termination in violation of public policy claim. (ECF No. 10).

### B. Applicable Law

The Supreme Court of California has stated that "at-will employees may recover tort damages from their employers if they can show they were discharged in contravention of fundamental public policy." *Green v. Ralee Eng'g Co.*, 960 P.2d 1046, 1048 (Cal. 1998) (citing *Tameny v. Atl. Richfield Co.*, 610 P.2d 1330, 1336 (Cal. 1980)). "[E]mployees who assert *Tameny* claims must show that the important public interests they seek to protect are 'tethered to fundamental policies that are delineated in constitutional or statutory provisions.'" *Id.* at 1048-49 (quoting *Gantt v. Sentry Ins.*, 824 P.2d 680, 688 (Cal. 1992), *overruled on other grounds by Green*, 610 P.2d at 1054 n.6). To state a plausible claim for wrongful termination in violation of public policy, an employee must plead the following: (1) the existence of an employer-employee relationship; (2) termination of the employee's employment; (3) that the employee's protected activity was the legal cause of the termination, or that there was "nexus" between the termination and the employee's protected activity; and (4) damage to the

employee. *Holmes v. Gen. Dynamics Corp.*, 22 Cal. Rptr.2d 172, 176-77 n.8 (Cal. Ct. App. 1993); *Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1031 (Cal. 1994). Viable wrongful termination in violation of public policy claims "generally fall into four categories:" (1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance. *Gantt*, 824 P.2d at 684.

**C. Analysis**

In this case, Plaintiff alleges that her employment was terminated after she "began to make avoidable mistakes due to her fatigue and inability to take breaks" due to Defendant's "refusal to allow [Plaintiff] to take state-mandated rest and meal breaks[.]" (ECF No. 1-2 at 7). "After making another mistake due to fatigue and being unable to take breaks to collect her thoughts and re-center herself, Defendant[] terminated [Plaintiff's] employment." *Id.* Courts in California require an employee to show a causal "nexus" between the employee's protected activity, and the employer's action to terminate employment. *See Turner*, 876 P.2d at 1031 (granting an employer summary judgment on wrongful discharge in violation of public policy claim because "[the plaintiff] did not establish the required nexus between his alleged 'whistle-blowing' activities in reporting allegedly illegal conduct, and negative reviews of his performance coming four years later.")

The facts alleged in the Complaint do not support an inference that Plaintiff's employment was terminated because she engaged in a particular protected activity. Plaintiff alleges that Defendant's "refusal to allow [her] to take state-mandated rest and meal breaks" led to her fatigue, which next led to her making "avoidable mistakes[,]" which subsequently led to her termination. (ECF No. 1-2 at 7). Plaintiff does not allege a specific protected activity that she engaged in prior to the termination of her employment. *See Tameny*, 610 P.2d at 1331 (reinstating tort claim for employee who alleged that he was terminated "because he refused to participate in an illegal scheme to fix retail gasoline prices"); *Holmes*, 22 Cal. Rptr. 2d at 174 (affirming judgment for

an employee who was terminated "for disclosing to management the company's violation of the false statements act"). The Court concludes that Plaintiff has failed to plead facts to support a cognizable wrongful termination in violation of public policy claim. *See also Wright v. Thrifty Payless, Inc.*, No. 2:13–cv–01681–KJM–EFB, 2013 WL 5718937, at *6 (E.D. Cal. Oct. 15, 2013) ("In cases where California courts have addressed the question whether an employee was wrongfully discharged in violation of public policy, there has always been an allegation that the termination was because of the employee's protected act or refusal to act."). Defendant's Motion to Dismiss Plaintiff's wrongful termination claim (ECF No. 4-1 at 13-14) is GRANTED.

## VII. Conclusion

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 4) is granted in part and denied in part. Defendant's Motion to Dismiss on the basis of the government contractor defense is DENIED. Defendant's Motion to Dismiss Plaintiff's first claim for relief, wrongful termination in violation of public policy, is GRANTED.

DATED: June 14, 2017

**WILLIAM Q. HAYES**
United States District Judge